IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CAPITAL ONE BANK (USA), N.A., and
CAPITAL ONE SERVICES, INC.,

    Plaintiffs,

v.

DARRELL V. MCGRAW, JR. in his official
capacity as West Virginia Attorney General,

    Defendant.

Civil Action No. 2:08-0165
(Judge Joseph R. Goodwin)

## PLAINTIFFS' RESPONSE TO MARCH 18, 2008 ORDER

Plaintiffs respectfully submit the following response to the Court's March 18, 2008 Order requesting briefing.

### BACKGROUND

In April 2005, the West Virginia Attorney General's Office served subpoenas upon Capital One Bank and Capital One Services, Inc. as part of an investigation into whether Capital One Bank's credit card and related banking practices violated any state or federal laws. (Compl. ¶ 7.) At the time, Capital One Bank was a Virginia state-chartered bank. (*Id.* ¶ 2.) Capital One Services, Inc. was an affiliate that serviced Capital One Bank in connection with its credit card and related banking practices. Capital One Services, Inc. is not and has never been a bank and does not issue any credit cards or provide consumers with its own banking services. (*Id.* ¶ 3.)

After unsuccessful attempts by Capital One Bank and Capital One Services, Inc. to narrow the broad scope of the subpoenas, the Attorney General filed applications in West Virginia state court to compel compliance with the subpoenas. (Compl. ¶ 11.) The presiding

judge, Judge Hoke, granted the applications two years later. (*Id.*) Capital One Bank and Capital One Services, Inc. petitioned for an appeal of that order before the West Virginia Supreme Court of Appeals. (*Id.*)

While that petition was pending, on March 1, 2008, Capital One Bank, a Virginia state-chartered bank, converted to Capital One Bank (USA), N.A., a national banking association organized under the National Bank Act. (Affidavit of Amy Cook, filed herewith ("Cook Aff."), ¶ 3.) Capital One Bank's assets are now owned by Capital One Bank (USA), N.A. (*Id.*) As a result, the OCC now exercises complete and exclusive visitorial powers over Capital One Bank (USA), N.A., including the ability to inspect its books and records and to enforce its compliance with applicable federal and state laws concerning its banking practices. 12 U.S.C. § 484(a). Capital One Bank (USA), N.A. notified the West Virginia Attorney General of this fact and requested that the subpoenas be withdrawn. The Attorney General refused. (Compl. ¶¶ 13, 14.) Accordingly, Capital One Bank (USA), N.A. and Capital One Services, Inc. filed suit against the West Virginia Attorney General in this Court on March 13, 2008.

Meanwhile, shortly after this suit was filed, the West Virginia Supreme Court granted the petition for review of Judge Hoke's order. That petition does not raise any arguments or claims under the National Bank Act. That is because the order under review was entered prior to Capital One Bank's conversion to a national bank and thus did not consider National Bank Act issues. The West Virginia Supreme Court's grant of the petition for review has reduced the urgency of immediate relief from this Court, although plaintiffs continue to request temporary and preliminary relief to guard against the threat of a potential enforcement action by the Attorney General.

On March 18, 2008, this Court entered an order observing that the complaint seeks temporary and preliminary relief, and asking the parties to provide briefing on two discrete legal

2

issues. As the Court's order did not invite a full briefing on all issues regarding temporary and preliminary relief, plaintiffs have limited this submission to responding to the questions posed by the Court.

### RESPONSE TO QUESTIONS POSED IN MARCH 18 ORDER

**I. BY SEEKING TO ENFORCE THE SUBPOENAS, DEFENDANT IS EXERCISING "VISITORIAL POWERS" AS THAT TERM IS DEFINED IN 12 U.S.C. § 484(a).**

The National Bank Act bars the West Virginia Attorney General from demanding an inspection of a national bank's books and records and from bringing suit against a national bank to enforce compliance with federal or state laws regarding its national banking activities.

The National Bank Act provides:

> No national bank shall be subject to any visitorial powers except as authorized by Federal law, vested in the courts of justice or such as shall be, or have been exercised or directed by Congress or by either House thereof or by any committee of Congress or of either House duly authorized.

12 U.S.C. § 484(a). The Supreme Court has defined "visitation" as "'the act of a superior or superintending officer, who visits a corporation to examine its manner of conducting business, and to enforce an observance of its laws and regulations.'" *Watters v. Wachovia Bank, N.A.*, 127 S. Ct. 1559, 1568 (2007) (quoting *Guthrie v. Harkness*, 199 U.S. 148, 158 (1905)).

Congress has granted the OCC broad authority to interpret the National Bank Act. 12 U.S.C. § 93a; *see also Clearing House Ass'n, LLC v. Cuomo*, 510 F.3d 105, 118 (2d Cir. 2007). Pursuant to that authority, the OCC has issued regulations interpreting the visitorial powers provisions of 12 U.S.C. § 484(a). Those regulations provide:

> Only the OCC or an authorized representative of the OCC may exercise visitorial powers with respect to national banks . . . .
>
> ***State officials*** may not exercise visitorial powers with respect to national banks, such as conducting examinations, ***inspecting or***

3

> ***requiring the production of books or records of national banks***, or ***prosecuting enforcement actions***, except in limited circumstances authorized by federal law.

12 C.F.R. § 7.4000(a)(1) (emphasis added). The regulations provide several examples of prohibited visitations, including:

    (i)    Examination of a bank;

    (ii)    ***Inspection of a bank's books and records***;

    (iii)    Regulation and supervision of activities authorized or permitted pursuant to federal banking law; and

    (iv)    ***Enforcing compliance with any applicable federal or state laws concerning those activities***.

12 C.F.R. § 7.4000(a)(2) (emphasis added).

Those OCC regulations are binding upon this Court. The Fourth Circuit has held that the OCC's regulations interpreting the visitorial powers provisions of 12 U.S.C. § 484(a) are subject to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). "If the OCC's interpretation is reasonable, we defer to its construction of the statute." *Nat'l City Bank v. Turnbaugh*, 463 F.3d 325, 332 (4th Cir. 2006), *cert. denied*, 127 S. Ct. 2096 (2007). The Second Circuit has specifically upheld the regulation at issue, 12 C.F.R. § 7.4000(a), as a reasonable, and therefore binding, interpretation of the National Bank Act. *Clearing House*, 510 F.3d at 119.

By seeking to enforce subpoenas for documents in plaintiffs' possession regarding Capital One Bank (USA), N.A.'s issuance of credit cards, the West Virginia Attorney General seeks to exercise visitorial powers as defined by the OCC. The initial issuance of the subpoenas did not run afoul of the visitorial powers provisions because the subpoenas sought documents from Capital One Bank, a Virginia state-chartered bank, and Capital One Services, Inc., a non-banking entity. However, after Capital One Bank converted to a national bank and became

4

Capital One Bank (USA), N.A., the Attorney General continued to demand documents from the national bank and from Capital One Services, Inc. regarding its credit card activities on behalf of the national bank.

Those continued demands for documents constitute a visitation as defined by the OCC. The Attorney General has demanded "inspection" of plaintiffs' "books and records." 12 C.F.R. § 7.4000(a)(2); *see also Wells Fargo Bank N.A. v. Boutris*, 419 F.3d 949, 964 (9th Cir. 2005) (holding that visitorial powers provisions preempted state audit of national bank operating subsidiary). Moreover, the Attorney General has demanded such inspection for the purpose of "enforcing compliance with any applicable federal or state laws concerning [national banking] activities." 12 C.F.R. § 7.4000(a)(2); *Boutris*, 419 F.3d at 963. The subpoenas were issued to "assist him in the investigation of possible unfair or deceptive practices relating to the marketing, advertising, servicing, including debt collection, and issuing of credit cards and related services."[1] Credit card and related services are squarely within the "business of banking" as defined in the National Bank Act. *See* 12 U.S.C. § 24 (Seventh) ("business of banking" includes "loaning money on personal security"); 12 C.F.R. § 7.4008 ("A national bank may make, sell, purchase, participate in, or otherwise deal in loans and interests in loans that are not secured by liens on, or interests in, real estate . . . .").

The only court to have considered the issue has squarely held that a request for documents by a state attorney general is an improper exercise of visitorial powers. In *Clearing House Association, LLC v. Cuomo*, the New York State Attorney General sent a letter to national

---

[1] Those subpoenas are attached hereto as Exhibits A and B. Plaintiffs note that the subpoenas have been placed under seal pursuant to order of the West Virginia state courts. Judge Hoke sealed the entire proceedings before him. In addition, Judge Stucky of the Circuit Court of Kanawha County granted a preliminary injunction barring any disclosure of the Attorney General's investigation, which the Attorney General had improperly disclosed on his website and in press releases.

banks requesting that, "[i]n lieu of issuing a formal subpoena," the banks voluntarily produce information about their mortgage policies and practices. 510 F.3d at 109, 121. The OCC sued the state attorney general, alleging that his document request constituted an improper and illegal exercise of visitorial powers. *Id.* at 109. The OCC explained that 12 C.F.R. § 7.4000 governed and that "[u]nder the regulation, visitorial exclusivity does apply to the OAG's intended actions here, the assertion of state sovereignty to inspect bank records and to coerce compliance with state law with respect to the federally authorized power to engage in mortgage lending." Brief of Plaintiff-Counterdefendant-Appellee Office of the Comptroller of the Currency, *Clearing House Ass'n, LLC v. Cuomo*, at 24, No. 05-5996 (2d. Cir.). The Second Circuit agreed, finding the document request to be an improper exercise of visitorial powers by the state attorney general. 510 F.3d at 121. The Second Circuit affirmed both the district court's conclusion that the state attorney general's investigation was prohibited and the district court's grant of injunctive and declaratory relief. *Id.* at 110, 121. The same logic applies here.

## II. SUBPOENAING CAPITAL ONE SERVICES, INC. INTERFERES WITH CAPITAL ONE BANK (USA), N.A.'S POWERS UNDER THE NATIONAL BANK ACT.

As explained above, the Attorney General improperly exercises visitorial powers by continuing to demand documents from Capital One Bank (USA), N.A. after its conversion to a national bank, regardless whether the documents sought relate to activities carried out before or after the conversion. *See Clearing House Association, LLC v. Cuomo*, 510 F.3d at 109, 121. The same is true when the Attorney General demands documents from Capital One Services, Inc. regarding its credit card and related activities on behalf of the bank. Capital One Bank (USA), N.A. has the same protection from visitation regardless whether it carries out its banking activities itself or through an agent like Capital One Services, Inc. The National Bank Act authorizes Capital One Bank (USA), N.A. to carry out its credit card and related national

banking activities through "duly authorized officers or agents," such as Capital One Services, Inc. 12 U.S.C. § 24 (Seventh); *SPGGC, LLC v. Ayotte*, 488 F.3d 525, 532 (1st Cir. 2007), *cert. denied*, 2008 U.S. LEXIS 1376 (Feb. 19, 2008). By seeking to investigate the credit card and related activities carried out by Capital One Services, Inc. on behalf of the national bank, the Attorney General interferes with the national bank's federally authorized power to act through its agents and to carry out banking functions subject solely to the visitorial authority of the OCC.

As the Supreme Court has explained in analyzing the visitorial powers provisions of the National Bank Act, "We have never held that the preemptive reach of the NBA extends only to a national bank itself. Rather, in analyzing whether state law hampers the federally permitted activities of a national bank, we have focused on the exercise of a national bank's *powers*, not its corporate structure." *Watters*, 127 S. Ct. at 1570 (emphasis in original). Accordingly, to determine whether the Attorney General improperly exercises visitorial powers by demanding documents from Capital One Services, Inc. regarding the credit card services that it carries out on behalf of the national bank, this Court must look to whether Capital One Bank (USA), N.A. exercises its national banking powers when carrying out credit card activities through its agent, Capital One Services, Inc. It plainly does, as provided in the express language of the National Bank Act.

The National Bank Act authorizes a national bank "[t]o exercise *by its . . . agents*, subject to law, all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24 (Seventh) (emphasis added). The plain language of that statutory provision indicates that Capital One Bank (USA), N.A. employs a federally authorized national banking power when it uses agents to conduct necessary banking functions.

In addition, the National Bank Act gives national banks general authority to "exercise all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C.

7

§ 24. Incidental activities are those that are "convenient or useful in connection with the performance of" a power authorized under federal law. *Arnold Tours, Inc. v. Camp*, 472 F.2d 427, 432 (1st Cir. 1972); *see also Am. Bankers Ass'n v. Lockyer*, 239 F. Supp. 2d 1000, 1012, 1016 (E.D. Cal. 2002). The use of another corporation, such as Capital One Services, Inc., to market and service credit cards issued by Capital One Bank (USA), N.A. is "convenient and useful" to the exercise of authorized banking powers. *See Franklin Nat'l Bank v. New York*, 347 U.S. 373, 377-78 (1954).

Accordingly, when Capital One Services, Inc. carries out credit card activities on behalf of Capital One Bank (USA), N.A., Capital One Services is acting as authorized under the National Bank Act, and is entitled to the same protections of the Act as the national bank would be. The First Circuit confronted precisely this issue in *SPGGC, LLC v. Ayotte*, 488 F.3d at 532-33. There, the First Circuit held that the National Bank Act precluded an action by a state attorney general against a non-bank firm that was marketing the services of a national bank. *Id.* at 533. The New Hampshire Attorney General had sent a notice of intent to bring an enforcement action against a retail shopping mall manager, Simon Property, for its marketing of gift cards issued by a national bank. The New Hampshire Attorney General argued that the National Bank Act did not preclude the enforcement action because the action "regulates only Simon, a company that is not a bank." *Id.* at 532.

The OCC submitted an amicus brief urging the court to reject the state attorney general's position as contrary to the National Bank Act. The OCC explained, "The Supreme Court has made it clear that a state law is just as offensive, and subject to preemption, when it purports to act upon the officers and agents of a national bank, rather than the bank itself . . . . Ultimately, agents are simply one means through which national banks exercise their powers, and the Supreme Court has made it clear that states may not interfere with national banks." Brief *Amicus*

8

*Curiae* of the Office of the Comptroller of the Currency in Support of Appellee U.S. Bank, N.A., at 19-20, *SPGGC, LLC v. Ayotte*, No. 06-2326 (1st Cir.).

The First Circuit agreed with the OCC and rejected the New Hampshire Attorney General's position. The court held that the state attorney general's "analysis is too formalistic: the question here is not *whom* the New Hampshire statute regulates, but rather, against *what activity* it regulates." *Id.* (emphasis in original) (citing *Watters*, 127 S. Ct. at 1570). The court noted that "the National Bank Act authorizes national banks to engage agents to carry out some of their activities." *Id.* Accordingly, the court concluded that the state attorney general's suit against Simon Property improperly and illegally interfered with the federally authorized powers of the national bank at issue, USB:

> Even if the [state enforcement suit] does not directly prohibit USB from engaging in [authorized national banking] activity, it does so indirectly by prohibiting Simon from acting as USB's agent. It would be contrary to the language and intent of the National Bank Act to allow states to avoid preemption of their statutes simply by enacting laws that prohibited non-bank firms from providing national banks with the resources to carry out their national banking activities.

*Id.* at 533; *see also SPGGC, LLC v. Ayotte*, 443 F. Supp. 2d 197, 207 (D.N.H. 2006) ("Relevant federal banking regulations authorize . . . [national] banks to employ the services of third parties, like Simon, to promote and sell their products. Simon's role in promoting the Giftcard program and selling the Giftcards does not alter the fact that the Giftcards are federal banking products.").

In reaching that conclusion, the *Ayotte* court relied on the Fourth Circuit's opinion in *Cades v. H&R Block*, 43 F.3d 869, 873-74 (4th Cir. 1994). *Ayotte*, 488 F.3d at 532. In *Cades*, a national bank hired H&R Block to solicit loan applications from customers, including the plaintiff. 43 F.3d at 873-74. The Fourth Circuit held that the interest provisions of the National Bank Act, 12 U.S.C. § 85, precluded a suit against H&R Block. *Cades*, 43 F.3d at 874. In so

holding, the Fourth Circuit relied on the fact that H&R Block employees were marketing the loans as "agents of a national bank." *Id.* at 873-74. In other words, the national bank could use a non-bank third party to solicit applications for loans without forfeiting the benefit of federal preemption regarding those activities.

The reasoning of *Ayotte* and *Cades* applies with equal force here. Capital One Bank (USA), N.A.'s banking activities do not lose the protection of the National Bank Act merely because those activities are carried out by an authorized agent, as contemplated by the Act.

In carrying out Capital One Bank (USA), N.A.'s credit card activities, Capital One Services, Inc. performs federally authorized banking functions on behalf of the national bank. Capital One Services, Inc. markets, advertises, solicits customers for, services, processes payments for, and collects debts on, credit cards issued by the national bank. (Cook Aff. ¶ 7.) For example, for credit card accounts held by the national bank, Capital One Services, Inc. oversees the issuance of account statements, which OCC regulations authorize national banks to provide to their cardholders "without regard to state law limitations." 12 C.F.R. § 7.4008(d)(2)(viii). (Cook Aff. ¶ 7.) Those duties are federally authorized activities carried out on behalf of Capital One Bank (USA), N.A. (Cook Aff. ¶ 8.) The National Bank Act authorizes the bank to issue credit cards and to carry out the activities "incidental" to credit card issuance. *See* 12 U.S.C. § 24 (Seventh) ("business of banking" includes "loaning money on personal security" and "incidental" functions); 12 C.F.R. § 7.4008 ("A national bank may make, sell, purchase, participate in, or otherwise deal in loans and interests in loans that are not secured by liens on, or interests in, real estate . . . ").

Those federally authorized activities are the sole target of the Attorney General's subpoena to Capital One Services, Inc. The subpoena seeks to investigate Capital One Services, Inc.'s "marketing, advertising, servicing, including debt collection, and issuing of credit cards

10

and related services." (Ex. B, hereto.) For example, the Attorney General demands that Capital One Services, Inc. "[p]rovide exemplars of each offer of pre-approved credit you sent to consumers," "[i]dentify each consumer with a secured credit account," "[i]dentify each consumer whose request to cancel and/or close a credit card account with Capital One you refused, because the account had a balance at the time the request was made," and "[i]dentify each person who collected credit card debts for you." (*Id.* at Request Nos. 11, 17, 18, 20.) Capital One Services, Inc. is not a bank and does not issue its own credit cards. (Cook Aff. ¶¶ 5-6.) It engages in credit card activities solely on behalf of and at the direction of Capital One Bank (USA), N.A. (*Id.* ¶¶ 7, 9.) To the extent that it provides pre-approved offers of credit, manages secured credit accounts, manages requests for cancellation of credit card accounts, and oversees debt collection, those activities are all done at the direction of Capital One Bank (USA), N.A. for the national bank's federally authorized credit card business. (*Id.*) Accordingly, any information and documents in Capital One Services, Inc.'s possession regarding credit card or related practices relate exclusively to the operations of Capital One Bank (USA), N.A. (*Id.* ¶ 10.)

By attempting to investigate Capital One Services, Inc.'s federally authorized activities carried out on behalf of Capital One Bank (USA), N.A., the Attorney General interferes with the national bank's right to exercise its powers without fear of state visitation under 12 U.S.C. § 484, just as the New Hampshire Attorney General interfered with U.S. Bank, N.A.'s authorized powers by suing its agent in *Ayotte*. The visitorial powers provisions are designed to relieve national banks of "the burdens and undue duplication state controls can produce." *Watters*, 127 S. Ct. at 1568. "[T]he NBA's restriction on visitorial powers reflects Congress's overall judgment that, in the context of national bank regulation, 'confusion would necessarily result from control possessed and exercised by two independent authorities.'" *Clearing House v. Cuomo*, 510 F.3d at 119 (quoting *Easton v. Iowa*, 188 U.S. 220, 232 (1903)). Those burdens

weigh just as heavily on Capital One Bank (USA), N.A. when its agents are investigated for carrying out its banking functions as when the national bank itself is investigated. And the potential for confusion from overlapping state and federal control, which the visitorial powers provisions of 12 U.S.C. § 484 were designed to eliminate, would continue if national banks were subject to the exclusive visitorial authority of the OCC while their agents were subject to state visitation when carrying out their banking functions. That is why the Supreme Court in *Watters* held that the reach of a national bank's protection from visitation by state officials should be based "on the exercise of a national bank's *powers*, not its corporate structure." *Watters*, 127 S. Ct. at 1570 (emphasis in original). Thus, just as Capital One Bank (USA), N.A. may be visited solely by the OCC regarding its credit card practices, its agent Capital One Services, Inc. is subject to visitation solely by the OCC for the banking services it has provided or does provide to the bank.

The West Virginia Attorney General's subpoena improperly forces the national bank to choose between the powers granted to it by Congress: either the bank must give up its right to use agents to carry out its banking functions, or the bank must resign itself to the burdens of state visitation concerning those functions. *See Ayotte*, 443 F. Supp. 2d at 207 (refusing to require a bank to decide between stopping its use of agents and submitting its practices to state regulation). That is not a choice that a national bank can be required to make. Congress granted national banks *both* the power to be free of visitation, 12 U.S.C. § 484(a), *and* the power to act through agents, 12 U.S.C. § 24 (Seventh).

## CONCLUSION

For the foregoing reasons, the Attorney General's attempt to enforce the subpoenas constitutes an improper exercise of visitorial powers. Moreover, the Attorney General's attempt to investigate Capital One Services, Inc. regarding its credit card activities on behalf of Capital

One Bank (USA), N.A. constitutes an impermissible interference with the national bank's federally authorized power to act through its agents and to carry out banking functions free from the burden of state visitations.

**CAPITAL ONE BANK (USA), N.A. and
CAPITAL ONE SERVICES, INC.**

**By Spilman Thomas & Battle, PLLC**

_____
Niall A. Paul (WV State Bar No. 5622)
Bruce M. Jacobs (WV State Bar No. 6333)
300 Kanawha Boulevard, East (25301)
PO Box 273
Charleston, WV 25321-0273
(304) 340-3800
(304) 340-3801 (*facsimile*)
npaul@spilmanlaw.com

and

James R. McGuire
Rita F. Lin
Morrison & Foerster LLP
425 Market Street
San Francisco, California 94105-2482
(415) 268-7000
(415) 268-7522 (*facsimile*)

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CAPITAL ONE BANK (USA), N.A., and
CAPITAL ONE SERVICES, INC.,

      Plaintiffs,

v.                                              Civil Action No. 2:08-0165
                                              (Judge Joseph R. Goodwin)

DARRELL V. MCGRAW, JR. in his official
capacity as West Virginia Attorney General,

      Defendant.

## CERTIFICATE OF SERVICE

I, Bruce M. Jacobs, hereby certify that on March 24, 2008, service of the foregoing **Plaintiffs' Response to March 18, 2008 Order** has been made upon the following parties by United States Mail, postage prepaid, addressed as follows:

        Troy N. Giatras, Esquire
        The Giatras Law Firm PLLC
        118 Capitol Street, Suite 400
        Charleston, WV 25301

        Charli Fulton, Esquire
        Consumer Protection and Antitrust Division
        812 Quarrier Street, 4th Floor
        PO Box 1789
        Charleston, WV 25326-1789

                                    _____
                                    Bruce M. Jacobs (WV State Bar # 6333)