**BEFORE THE ATTORNEY GENERAL OF THE STATE OF WEST VIRGINIA**
**STATE CAPITOL**
**CHARLESTON, WEST VIRGINIA**

### SUBPOENA

## IN THE MATTER OF THE INVESTIGATION OF:

| | | |
|---|---|---|
| CAPITAL ONE BANK | ) | SUBPOENA TO PRODUCE |
| 11011 West Broad Street | ) | CERTAIN RECORDS |
| Glen Allen, Virginia  23233 | ) | |

## IN THE NAME OF THE STATE OF WEST VIRGINIA:

To:   Nigel W. Morris, President and C.O.O.
CAPITAL ONE BANK
c/o Corporation Service Company
Post Office Box 1463
Richmond, Virginia  23218

YOU ARE HEREBY COMMANDED to respond and to produce the following requested documents or other tangible things within your possession, custody or control as specified below for examination and copying no later than May 2, 2005 to Charli Fulton, Senior Assistant Attorney General, at the Office of the Attorney General of West Virginia, Consumer Protection Division, 812 Quarrier Street, L & S Building, Fourth Floor, Charleston, West Virginia (mailing address Post Office Box 1789, Charleston, West Virginia 25326-1789).

This Subpoena is being issued pursuant to the authority granted to the Attorney General by West Virginia Code § 46A-7-104(1) to assist him in the investigation of possible unfair or deceptive acts or practices relating to marketing, advertising, servicing, including debt collection, and issuing of credit cards and related services, in violation of the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101, *et seq.*, and other state and federal laws applicable to business activities of Capital One.

**EXHIBIT**

**A**

All information provided to the Office of the Attorney General of West Virginia in response to this Subpoena shall be retained in a confidential manner, consistent with the provisions of W. Va. Code § 46A-7-104(4), and shall not be made public except upon the commencement of enforcement proceedings.

Failure to comply with this subpoena may result in the institution of a subpoena enforcement proceeding in the circuit court, the filing of a complaint in circuit court, or both.

**The information requested is for the period of time beginning January 1, 2001 and continuing until the date of your response, unless otherwise specified herein.** If clarification should be needed in connection with your response to this subpoena, please direct your inquiries to Charli Fulton, Senior Assistant Attorney General, at 304-558-8986.

### DEFINITIONS

A.     "Capital One" means Capital One Bank, its officers, directors, managers, predecessors in interest, successors in interest, attorneys, agents, representatives, employees, consultants and subsidiaries.

B.     "Advertisement" means the publication, dissemination or circulation of any matter, oral or written, including labeling, which tends to induce, directly or indirectly, any person to enter into any obligation, sign any contract, or acquire any title or interest in any goods or services and includes every word device to disguise any form of business solicitation by using such terms as "renewal," "invoice," "bill," "statement" or "reminder," to create an impression of existing obligation when there is none, or other language to mislead any person in relation to any sought-after commercial transaction.

2

C.      "Communications" means all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, e-mails, telegraphs, advertisements, statements, questions, commands, interjections, or other forms of oral or written intercourse, in writing or by mechanical or electronic device, whether for internal or external use.

D.      "Consumer" means any natural person residing in the State of West Virginia who enters into an agreement to purchase or lease goods or services primarily for personal, family, household or agricultural purposes and includes, but is not limited to, those persons who were residents of the State of West Virginia when the agreement was made.

E.      "Documents" means any and all information in tangible form (including originals and all non-identical copies of originals, mechanical and electronic recordings, tapes, transcripts, and/or information stored in computers or other data storage or processing equipment which has been translated or is translatable into usable form) in your possession, custody or control, regardless of where located.  The term includes, but is not limited to, all agenda, minutes, notes, handouts, cards, estimates, account records, ledgers, orders, commission statements or records, price lists or circulars, marketing guides or samples, bid specifications, worksheets, work orders, quotations, offers, inquiries, bulletins, billing statements, contracts, financial statements, telephone logs, invitations, communications, tabulations, maps, charts, photographs, microfilm, microfiche, mechanical transcription, pamphlets, letters, telegrams, cables, telexes, teletypes, correspondence, contracts, drafts, agreements, notes to files, reports, memoranda, plans, flow sheets, calendar and diary entries, studies, interoffice communications, summaries, articles, announcements, newspaper clippings, books, statistical data, prospectuses, analyses, documents contained on magnetic computer tape, magnetic computer disks, cd-rom, computer printouts, computer display screens capable of being

printed, or other tangible document or electronic record of information whether prepared by Capital One, or by any other person, that is in Capital One's possession, custody or control, or to which Capital One has, has had, or can obtain access.

If a document has been prepared in several copies, or if additional copies have been made and the copies are not identical (by reason of subsequent modification or revisions by the addition of notations or other modifications, including, but not limited to, underlining, crossing out, initialing, writing comments thereon, signing, or clipping or stapling documents thereto, etc.), each non-identical copy is a separate "document" for the purposes of this subpoena.

F.      "Identify," when used in regard to a corporate or business entity, means to provide the name, business address, and business telephone number for that entity.

G.      "Identify," when used in regard to a document, means to provide the name of the author or originator, the date written or originated, the identity of each person to whom the original or copy was addressed or delivered, the identity of such person known, or reasonably believed, to have custody thereof, and a brief description of the matter thereof, all with sufficient particularity to allow one to readily identify and locate such document.

H.      "Identify," when used in regard to a consumer or consumers, means to provide the name, address, and telephone number of the consumer.

I.      "Person" means a natural person, corporation of any type, partnership, sole proprietorship, firm, union, association, federation, partnership, joint venture, joint stock association, business, trust, governmental body or quasi-public entity, regulatory authority or any agency or subdivision thereof.

J.       "Relate to" means to consist of, refer to, reflect or be in any way logically or factually connected with the matter discussed.

K.       "Sale" means and includes any sale, offer for sale, or attempt to sell any goods for cash or credit or any services or offer for services for cash or credit.

L.       "Trade" or "commerce" means the advertising, offering for sale, sale or distribution of any goods or services and shall include any trade or commerce, directly or indirectly, affecting the people of West Virginia.

## INSTRUCTIONS

A.       With respect to any documents that Capital One may withhold on a claim of privilege, provide a statement signed by Capital One setting forth as to each document:

1.      The name(s) of the sender(s) of the document;

2.      The name(s) of the author(s) of the document;

3.      The name(s) of the person(s) to whom copies were sent;

4.      The job title of every person named in ¶¶ 1, 2, and 3 above;

5.      The date of the document;

6.      The date the document was received by those having possession of the document;

7.      A brief description of the nature and subject matter of the document; and,

8.      The statute, rule or decision that is claimed to give rise to the privilege.

B.       In producing the documents requested herein, indicate the specific request(s) in response to which each document or group of documents is being produced.

C.      Capital One is to produce and permit the Attorney General or his representative to inspect and copy the originals of the requested documents if the originals are in the possession, custody or control of Capital One, and, if not, the best copies thereof.

D.      If any document was, but no longer is, in your possession or subject to your control, state what disposition was made of it, by whom, and the date or dates or approximate date or dates on which such disposition was made and why.

E.      Whenever appropriate, the singular form of a word should be interpreted in the plural. "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this request to reproduce any documents which might otherwise be construed to be outside its scope.

F.      Whenever appropriate, information requested regarding consumers shall be provided in electronic format in either Microsoft Excel or Microsoft Access.

## DOCUMENTS TO BE PRODUCED

1.      All documents that relate to the ownership of Capital One during the relevant period of time, including but not limited to articles of incorporation, and all documents that relate to change of ownership, mergers and acquisitions.

2.      Copies of licenses, permits, certificates and/or registrations issued to Capital One by any municipality, county or state entity, or governmental organization in West Virginia during the relevant period of time.

3.      Copies of all bonds or insurance policies covering Capital One.

4.      Documents sufficient to identify all officers and directors of Capital One.

5.      Identify each consumer to whom you sold the Payment Protection Plan and for each

    a.      identify the source of the consumer's income, if the consumer's income was from a source other than from gainful employment,

    b.      indicate if the consumer made a claim under the plan;

    c.      if a consumer's claim was rejected indicate the reason it was rejected, *e.g.* already not gainfully employed or disabled prior to or at the time the plan was purchased;

    d.      provide the total amount each consumer has paid for the plan.

6.    Describe all pre-sale procedures that are used to determine whether consumers are gainfully employed and not disabled.

7.    Identify all products/services that Capital One sells, sold or attempts to sell consumers during the "card activation call."

8.    For each product/service identified in your response to ¶ 7 above, please provide

    a.      the price of each;

    b.      the provider of each;

    c.      the amount of money Capital One receives from the sale of each;

    d.      any agreement between Capital One and the provider of the product/service; and,

    e.      the period of time this product/service was available.

9.    Identify all products/services not identified in your response to ¶ ¶ 7, 8 above that Capital One sells, sold or attempts to sell consumers when consumers telephone Capital One for reasons other than card activation.

10.    For each product/service identified in your response to ¶ 9 above, please provide

    a.      the price of each;

b.    the provider of each;

c.    the amount of money Capital One receives from the sale of each;

d.    any agreement between Capital One and the provider of the product/service; and,

e.    the period of time this product/service was available.

11.    Provide exemplars of each offer of pre-approved credit you sent to consumers.

12.    For each exemplar provided in response to ¶ 11 above, explain the criteria you used to determine the consumers to whom that exemplar would be mailed – i.e. – age, gender, income, credit history, credit score.

13.    For each exemplar provided in response to ¶ 11 above, identify each consumer who accepted your offer of credit and for each provide

a.    the date the account was opened, the initial credit limit and the initial APR;

b.    if the account is currently active, the current credit limit and APR;

c.    if the account is closed, the credit limit and APR at the time the account was closed, and the reason the account was closed;

d.    a copy of any and all disclosures you sent to consumers relating to the credit card, both before and after the card was issued.

14.    Provide exemplars of each offer of credit you sent to consumers that was not a pre-approved offer of credit.

15.    For each exemplar provided in response to ¶ 14 above, explain the criteria you used to determine the consumers to whom that exemplar would be mailed – i.e. – age, gender, income, credit history, or credit score.

16.     For each exemplar provided in response to ¶ 14 above, identify each consumer who accepted your offer of credit and for each provide

    a.    the date the account was opened, the initial credit limit and the initial APR;

    b.    if the account is currently active, the current credit limit and APR;

    c.    if the account is closed, the credit limit and APR at the time the account was closed, and the reason the account was closed;

    d.    a copy of any and all disclosures you sent to the consumer relating to the credit card.

17.     Identify each consumer with a secured credit card account with you and for each provide:

    a.    a copy of the cardholder agreement;

    b.    amount of security charged;

    c.    if that consumer incurred late fees or over limit fees, the dates the fees were incurred and the amount of the fees;

    d.    if the account has been charged off and the amount charged off;

18.     Identify each consumer whose request to cancel and/or close a credit card account with Capital One you refused, because the account had a balance at the time the request was made.

19.     For each consumer identified in ¶ 18 above, provide

    a.    the date of the request;

    b.    the balance on the account at time request was made;

    c.    each fee or amount charged to the account after the request was made, the nature of the fee or amount charged, the amount charged, and the date of the charge;

    d.    the date you closed the account, whether the account was paid in full or had a balance due; and the amount, if any, you charged off and/or turned over to collections.

20.    Identify each person who collected credit card debts for you, and for each provide the agreement between you and the person.

21.    Describe each type of fee charged by you in connection with your credit card products and include in your description the purpose for the fee, the circumstances under which this fee is assessed by you to a consumer's account, and the amount of the fee.

22.    Identify each type of credit card you offer or offered to consumers and for each provide:

    a.    the initial APR;

    b.    if applicable, any policies for changing the APR; and,

    c.    any security or membership fees required.

23.    Identify each consumer who received one of your credit cards and who did not activate the card.

24.    For each consumer identified in ¶ 23 above, provide

    a.    any fees or charges you applied to this account, including the amount of the fee or charge, the type of fee or charge, and the date the fee or charge was applied;

    b.    any amounts paid to you by the consumer on this account;

    c.    if the account was charged off, the account balance at the time it was charged off.

25.    Identify each consumer who exceeded his/her credit limit as a result of late fees applied by you to the account and for each provide

      a.    the date of each such occurrence;

      b.    the amount of over limit fees charged to the account, if any.

26.    Identify each consumer who exceeded his/her credit limit as a result of charges for products or services purchased by the consumer that were marketed or sold by you or by agreement with you and for each provide

      a.    the date of each such occurrence;

      b.    the product or service and the amount charged for the product or service;

      c.    the amount of over limit fees charged to the account, if any.

27.    Provide copies of your written procedures for insuring that consumers do not exceed their accounts' credit limits.

28.    Provide copies of your written procedures for verifying the identities of consumers accepting pre-approved offers of credit.

29.    Provide exemplars of notices of right to cure default you sent to consumers having secured credit card accounts.

30.    Provide copies of your written procedures for investigating consumer complaints of unauthorized charges or identity theft.

31.    Provide copies of your written procedure or policy for imposing late fees on each type of credit card you offer(ed), including the day of the billing cycle the late fee is charged – i.e. – the number of days past the due date.

32.    Identify any merchant with which you had an agreement that you would issue a credit card to a consumer at the point of sale for the purpose of financing the consumer's purchase from

that merchant, whether a private label revolving charge credit account or some other type of credit card account, and provide copies of any and all agreements.

33.    Copies of all documents identifying any and all complaints made by West Virginia consumers against Capital One during the relevant period of time, including complaints made directly to Capital One or to any other entity.

34.    Describe all civil actions, administrative or regulatory proceedings of any type or nature whatsoever wherein Capital One is named as a party in any court, state or federal law enforcement or regulatory agency, by (i) identifying all parties to the matter; (ii) providing a copy of all substantive pleadings or documents filed therein; and (iii) providing a copy of all dispositional orders, consent decrees, settlement agreements, assurances of discontinuance or judgements of any type or nature whatsoever during the relevant period of time.

Given under my hand this 25t day of March, 2005.

DARRELL V. McGRAW, JR.
ATTORNEY GENERAL


BY: _____
JILL L. MILES        (WV #4671)
DEPUTY ATTORNEY GENERAL
Consumer Protection /Antitrust Division
Post Office Box 1789
Charleston, West Virginia 25326-1789
Telephone:    304-558-8986

**BEFORE THE ATTORNEY GENERAL OF THE STATE OF WEST VIRGINIA**
**STATE CAPITOL**
**CHARLESTON, WEST VIRGINIA**

**SUBPOENA**

**IN THE MATTER OF THE INVESTIGATION OF:**

CAPITAL ONE SERVICES, INC.          )          SUBPOENA TO PRODUCE
1500 Capital One Drive                       )          CERTAIN RECORDS
Richmond, Virginia 23238                   )

IN THE NAME OF THE STATE OF WEST VIRGINIA:

      To:    Gary Perlin, President and C.F.C.
              CAPITAL ONE SERVICES, INC.
              c/o Corporation Service Company
              Post Office Box 1463
              Richmond, Virginia  23218

      YOU ARE HEREBY COMMANDED to respond and to produce the following requested

documents or other tangible things within your possession, custody or control as specified below for

examination and copying no later than May 2, 2005 to Charli Fulton, Senior Assistant Attorney

General, at the Office of the Attorney General of West Virginia, Consumer Protection Division, 812

Quarrier Street, L & S Building, Fourth Floor, Charleston, West Virginia (mailing address Post

Office Box 1789, Charleston, West Virginia 25326-1789).

      This Subpoena is being issued pursuant to the authority granted to the Attorney General by

West Virginia Code § 46A-7-104(1) to assist him in the investigation of possible unfair or deceptive

acts or practices relating to marketing, advertising, servicing, including debt collection, and issuing

of credit cards and related services, in violation of the West Virginia Consumer Credit and Protection

Act, W. Va. Code § 46A-1-101, *et seq.*, and other state and federal laws applicable to business

activities of Capital One.

EXHIBIT
**B**

All information provided to the Office of the Attorney General of West Virginia in response to this Subpoena shall be retained in a confidential manner, consistent with the provisions of W. Va. Code § 46A-7-104(4), and shall not be made public except upon the commencement of enforcement proceedings.

Failure to comply with this subpoena may result in the institution of a subpoena enforcement proceeding in the circuit court, the filing of a complaint in circuit court, or both.

**The information requested is for the period of time beginning January 1, 2001 and continuing until the date of your response, unless otherwise specified herein.** If clarification should be needed in connection with your response to this subpoena, please direct your inquiries to Charli Fulton, Senior Assistant Attorney General, at 304-558-8986.

## DEFINITIONS

A.    "Capital One" means Capital One Bank, its officers, directors, managers, predecessors in interest, successors in interest, attorneys, agents, representatives, employees, consultants and subsidiaries.

B.    "Advertisement" means the publication, dissemination or circulation of any matter, oral or written, including labeling, which tends to induce, directly or indirectly, any person to enter into any obligation, sign any contract, or acquire any title or interest in any goods or services and includes every word device to disguise any form of business solicitation by using such terms as "renewal," "invoice," "bill," "statement" or "reminder," to create an impression of existing obligation when there is none, or other language to mislead any person in relation to any sought-after commercial transaction.

2

C.     "Communications" means all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, e-mails, telegraphs, advertisements, statements, questions, commands, interjections, or other forms of oral or written intercourse, in writing or by mechanical or electronic device, whether for internal or external use.

D.     "Consumer" means any natural person residing in the State of West Virginia who enters into an agreement to purchase or lease goods or services primarily for personal, family, household or agricultural purposes and includes, but is not limited to, those persons who were residents of the State of West Virginia when the agreement was made.

E.     "Documents" means any and all information in tangible form (including originals and all non-identical copies of originals, mechanical and electronic recordings, tapes, transcripts, and/or information stored in computers or other data storage or processing equipment which has been translated or is translatable into usable form) in your possession, custody or control, regardless of where located.  The term includes, but is not limited to, all agenda, minutes, notes, handouts, cards, estimates, account records, ledgers, orders, commission statements or records, price lists or circulars, marketing guides or samples, bid specifications, worksheets, work orders, quotations, offers, inquiries, bulletins, billing statements, contracts, financial statements, telephone logs, invitations, communications, tabulations, maps, charts, photographs, microfilm, microfiche, mechanical transcription, pamphlets, letters, telegrams, cables, telexes, teletypes, correspondence, contracts, drafts, agreements, notes to files, reports, memoranda, plans, flow sheets, calendar and diary entries, studies, interoffice communications, summaries, articles, announcements, newspaper clippings, books, statistical data, prospectuses, analyses, documents contained on magnetic computer tape, magnetic computer disks, cd-rom, computer printouts, computer display screens capable of being

printed, or other tangible document or electronic record of information whether prepared by Capital One, or by any other person, that is in Capital One's possession, custody or control, or to which Capital One has, has had, or can obtain access.

If a document has been prepared in several copies, or if additional copies have been made and the copies are not identical (by reason of subsequent modification or revisions by the addition of notations or other modifications, including, but not limited to, underlining, crossing out, initialing, writing comments thereon, signing, or clipping or stapling documents thereto, etc.), each non-identical copy is a separate "document" for the purposes of this subpoena.

F.      "Identify," when used in regard to a corporate or business entity, means to provide the name, business address, and business telephone number for that entity.

G.      "Identify," when used in regard to a document, means to provide the name of the author or originator, the date written or originated, the identity of each person to whom the original or copy was addressed or delivered, the identity of such person known, or reasonably believed, to have custody thereof, and a brief description of the matter thereof, all with sufficient particularity to allow one to readily identify and locate such document.

H.      "Identify," when used in regard to a consumer or consumers, means to provide the name, address, and telephone number of the consumer.

I.      "Person" means a natural person, corporation of any type, partnership, sole proprietorship, firm, union, association, federation, partnership, joint venture, joint stock association, business, trust, governmental body or quasi-public entity, regulatory authority or any agency or subdivision thereof.

J.    "Relate to" means to consist of, refer to, reflect or be in any way logically or factually connected with the matter discussed.

K.    "Sale" means and includes any sale, offer for sale, or attempt to sell any goods for cash or credit or any services or offer for services for cash or credit.

L.    "Trade" or "commerce" means the advertising, offering for sale, sale or distribution of any goods or services and shall include any trade or commerce, directly or indirectly, affecting the people of West Virginia.

## INSTRUCTIONS

A.    With respect to any documents that Capital One may withhold on a claim of privilege, provide a statement signed by Capital One setting forth as to each document:

    1.    The name(s) of the sender(s) of the document;

    2.    The name(s) of the author(s) of the document;

    3.    The name(s) of the person(s) to whom copies were sent;

    4.    The job title of every person named in ¶¶ 1, 2, and 3 above;

    5.    The date of the document;

    6.    The date the document was received by those having possession of the document;

    7.    A brief description of the nature and subject matter of the document; and,

    8.    The statute, rule or decision that is claimed to give rise to the privilege.

B.    In producing the documents requested herein, indicate the specific request(s) in response to which each document or group of documents is being produced.

C.     Capital One is to produce and permit the Attorney General or his representative to inspect and copy the originals of the requested documents if the originals are in the possession, custody or control of Capital One, and, if not, the best copies thereof.

D.     If any document was, but no longer is, in your possession or subject to your control, state what disposition was made of it, by whom, and the date or dates or approximate date or dates on which such disposition was made and why.

E.     Whenever appropriate, the singular form of a word should be interpreted in the plural. "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this request to reproduce any documents which might otherwise be construed to be outside its scope.

F.     Whenever appropriate, information requested regarding consumers shall be provided in electronic format in either Microsoft Excel or Microsoft Access.

## DOCUMENTS TO BE PRODUCED

1.     All documents that relate to the ownership of Capital One during the relevant period of time, including but not limited to articles of incorporation, and all documents that relate to change of ownership, mergers and acquisitions.

2.     Copies of licenses, permits, certificates and/or registrations issued to Capital One by any municipality, county or state entity, or governmental organization in West Virginia during the relevant period of time.

3.     Copies of all bonds or insurance policies covering Capital One.

4.     Documents sufficient to identify all officers and directors of Capital One.

5.     Identify each consumer to whom you sold the Payment Protection Plan and for each

6

    a.    identify the source of the consumer's income, if the consumer's income was from a source other than from gainful employment,

    b.    indicate if the consumer made a claim under the plan;

    c.    if a consumer's claim was rejected indicate the reason it was rejected, *e.g.* already not gainfully employed or disabled prior to or at the time the plan was purchased;

    d.    provide the total amount each consumer has paid for the plan.

6.    Describe all pre-sale procedures that are used to determine whether consumers are gainfully employed and not disabled.

7.    Identify all products/services that Capital One sells, sold or attempts to sell consumers during the "card activation call."

8.    For each product/service identified in your response to ¶ 7 above, please provide

    a.    the price of each;

    b.    the provider of each;

    c.    the amount of money Capital One receives from the sale of each;

    d.    any agreement between Capital One and the provider of the product/service; and,

    e.    the period of time this product/service was available.

9.    Identify all products/services not identified in your response to ¶ ¶ 7, 8 above that Capital One sells, sold or attempts to sell consumers when consumers telephone Capital One for reasons other than card activation.

10.    For each product/service identified in your response to ¶ 9 above, please provide

    a.    the price of each;

7

**FILED UNDER SEAL**

b.      the provider of each;

c.      the amount of money Capital One receives from the sale of each;

d.      any agreement between Capital One and the provider of the product/service; and,

e.      the period of time this product/service was available.

11.    Provide exemplars of each offer of pre-approved credit you sent to consumers.

12.    For each exemplar provided in response to ¶ 11 above, explain the criteria you used to determine the consumers to whom that exemplar would be mailed – i.e. – age, gender, income, credit history, credit score.

13.    For each exemplar provided in response to ¶ 11 above, identify each consumer who accepted your offer of credit and for each provide

a.      the date the account was opened, the initial credit limit and the initial APR;

b.      if the account is currently active, the current credit limit and APR;

c.      if the account is closed, the credit limit and APR at the time the account was closed, and the reason the account was closed;

d.      a copy of any and all disclosures you sent to consumers relating to the credit card, both before and after the card was issued.

14.    Provide exemplars of each offer of credit you sent to consumers that was not a pre-approved offer of credit.

15.    For each exemplar provided in response to ¶ 14 above, explain the criteria you used to determine the consumers to whom that exemplar would be mailed – i.e. – age, gender, income, credit history, or credit score.

8

16.    For each exemplar provided in response to ¶ 14 above, identify each consumer who accepted your offer of credit and for each provide

    a.    the date the account was opened, the initial credit limit and the initial APR;

    b.    if the account is currently active, the current credit limit and APR;

    c.    if the account is closed, the credit limit and APR at the time the account was closed, and the reason the account was closed;

    d.    a copy of any and all disclosures you sent to the consumer relating to the credit card.

17.    Identify each consumer with a secured credit card account with you and for each provide:

    a.    a copy of the cardholder agreement;

    b.    amount of security charged;

    c.    if that consumer incurred late fees or over limit fees, the dates the fees were incurred and the amount of the fees;

    d.    if the account has been charged off and the amount charged off;

18.    Identify each consumer whose request to cancel and/or close a credit card account with Capital One you refused, because the account had a balance at the time the request was made.

19.    For each consumer identified in ¶ 18 above, provide

    a.    the date of the request;

    b.    the balance on the account at time request was made;

    c.    each fee or amount charged to the account after the request was made, the nature of the fee or amount charged, the amount charged, and the date of the charge;

9

d.      the date you closed the account, whether the account was paid in full or had

a balance due; and the amount, if any, you charged off and/or turned over to collections.

20.     Identify each person who collected credit card debts for you, and for each provide the

agreement between you and the person.

21.     Describe each type of fee charged by you in connection with your credit card products

and include in your description the purpose for the fee, the circumstances under which this fee is

assessed by you to a consumer's account, and the amount of the fee.

22.     Identify each type of credit card you offer or offered to consumers and for each

provide:

a.      the initial APR;

b.      if applicable, any policies for changing the APR; and,

c.      any security or membership fees required.

23.     Identify each consumer who received one of your credit cards and who did not

activate the card.

24.     For each consumer identified in ¶ 23 above, provide

a.      any fees or charges you applied to this account, including the amount of the

fee or charge, the type of fee or charge, and the date the fee or charge was applied;

b.      any amounts paid to you by the consumer on this account;

c.      if the account was charged off, the account balance at the time it was charged

off.

25.     Identify each consumer who exceeded his/her credit limit as a result of late fees

applied by you to the account and for each provide

10

    a.    the date of each such occurrence;

    b.    the amount of over limit fees charged to the account, if any.

26.    Identify each consumer who exceeded his/her credit limit as a result of charges for products or services purchased by the consumer that were marketed or sold by you or by agreement with you and for each provide

    a.    the date of each such occurrence;

    b.    the product or service and the amount charged for the product or service;

    c.    the amount of over limit fees charged to the account, if any.

27.    Provide copies of your written procedures for insuring that consumers do not exceed their accounts' credit limits.

28.    Provide copies of your written procedures for verifying the identities of consumers accepting pre-approved offers of credit.

29.    Provide exemplars of notices of right to cure default you sent to consumers having secured credit card accounts.

30.    Provide copies of your written procedures for investigating consumer complaints of unauthorized charges or identity theft.

31.    Provide copies of your written procedure or policy for imposing late fees on each type of credit card you offer(ed), including the day of the billing cycle the late fee is charged – i.e. – the number of days past the due date.

32.    Identify any merchant with which you had an agreement that you would issue a credit card to a consumer at the point of sale for the purpose of financing the consumer's purchase from

that merchant, whether a private label revolving charge credit account or some other type of credit card account, and provide copies of any and all agreements.

33.   Copies of all documents identifying any and all complaints made by West Virginia consumers against Capital One during the relevant period of time, including complaints made directly to Capital One or to any other entity.

34.   Describe all civil actions, administrative or regulatory proceedings of any type or nature whatsoever wherein Capital One is named as a party in any court, state or federal law enforcement or regulatory agency, by (i) identifying all parties to the matter; (ii) providing a copy of all substantive pleadings or documents filed therein; and (iii) providing a copy of all dispositional orders, consent decrees, settlement agreements, assurances of discontinuance or judgements of any type or nature whatsoever during the relevant period of time.

Given under my hand this 29th day of March, 2005.

DARRELL V. McGRAW, JR.
ATTORNEY GENERAL

BY: _____

JILL L. MILES        (WV #4671)
DEPUTY ATTORNEY GENERAL
Consumer Protection /Antitrust Division
Post Office Box 1789
Charleston, West Virginia 25326-1789
Telephone:    304-558-8986

12